UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NEEDBASEDAPPS, LLC, | § | |
| | § | |
| Plaintiff, | § | Cv. No. SA:12-CV-00291-DAE |
| | § | |
| vs. | § | |
| | § | |
| ROBBINS RESEARCH | § | |
| INTERNATIONAL, INC.; STEVEN | § | |
| PAUL DOYLE; AND ANTHONY | § | |
| "TONY" ROBBINS a/k/a or f/k/a | § | |
| ANTHONY JAY MAHAVORICK, | § | |
| | § | |
| Defendants. | § | |

ORDER: (1) GRANTING DEFENDANTS' MOTION TO TRANSFER ACTION
TO THE CENTRAL DISTRICT OF CALIFORNIA; (2) DENYING AS MOOT
DEFENDANTS' ALTERNATIVE MOTIONS; (3) DENYING AS MOOT
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; AND (4)
DENYING AS MOOT PLAINTIFF'S MOTION FOR
REFERRAL TO MEDIATION

On February 15, 2013, the Court heard oral argument on the Motion

for Preliminary Injunction filed by Plaintiff Needbasedapps, LLC ("Plaintiff" or

"NBA") (doc. # 8); NBA's Motion for Referral to Mediation (doc. #15); and

various alternative motions—a Motion to Dismiss or Transfer Action Pursuant to

"First Filed" Rule, an Alternative Motion to Dismiss or Transfer Based on

Improper Venue, an Alternative Motion to Transfer Pursuant to 28

U.S.C. § 1404(a), and an Alternative Motion to Stay Proceedings Pending Rulings

in First-Filed Case—filed by Steven Paul Doyle, Anthony "Tony" Robbins, and

1

Robbins Research International, Inc. (collectively, "Defendants") (doc. # 10). Robert L. Chaiken, Esq., and R. Laurence Macon, Esq., appeared at the hearing on behalf of Plaintiff; Bruce K. Spindler, Esq., and Linda S. McDonald, Esq., appeared at the hearing on behalf of Defendants.  For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss or Transfer Action Pursuant to "First Filed" Rule (doc. # 10 at 3–5) and **TRANSFERS** this case to the United States District Court for the Central District of California; **DENIES AS MOOT** Defendants' remaining alternative motions for dismissal, transfer, or stay (doc. # 10 at 5–13); **DENIES AS MOOT** Plaintiff's Motion for Preliminary Injunction (doc. # 8); and **DENIES AS MOOT** Plaintiff's Motion for Referral to Mediation (doc. # 15).

<u>BACKGROUND</u>

I.     <u>Events Precipitating This Litigation</u>

Plaintiff Needbasedapps, LLC ("NBA") is a Texas limited liability company.  Defendant Robbins Research International, Inc. ("RRI") is a marketing firm incorporated in Nevada, with its primary place of business in California. (Doc. # 10-1 at 1.)  RRI promotes and sells personal coaching services and motivational products.  (<u>Id.</u>)  Defendant Anthony "Tony" Robbins ("Robbins") is RRI's Chairman.  (<u>Id.</u>)

In October or November of 2010, RRI and NBA entered into discussions about NBA developing iPhone, iPad, Mac Desktop, and web-based applications for RRI (collectively, "the applications").  (Doc. # 1 Ex. A ¶ 9; doc. # 10 App. C ¶¶ 9–11.)  The parties did not execute a written contract. (Doc. # 10 App. C ¶ 9; doc. # 1 Ex. A ¶¶ 14–15.)  Nevertheless, in January or February of 2011, RRI allegedly "loaned" $20,000 to NBA "to offset certain costs of developing the iPhone application and the iPad application."  (Doc. 10-1 ¶ 9.) Then, on February 9, 2011, a representative of NBA indicated in an email that NBA was "short on cash" and requested "some kine [sic] of an agreement or written statement" that NBA could show potential investors."  (Doc. # 10 App. E, Ex. A; doc. # 10-1 ¶ 11.)  In response to this request, RRI and NBA began to negotiate a term sheet, allegedly reaching agreement on a Summary of Terms ("SOT") in May 2011.  (Doc. # 10 App. C ¶ 12.)

RRI claims that the SOT established, among other things, that (1) "upon RRI's acceptance of an Application, any and all discoveries, inventions, improvements, trade secrets, know-how, works of authorship or other intellectual property . . . incorporated into the application would become . . . the sole and exclusive property of the RRI" (id. ¶ 12(d)(i)); (2) that "all original works of authorship protectable by copyright [were] 'works for hire' owned by RRI" (id. ¶ 12(d)(ii); (3) that Defendant would facilitate all necessary transfers and

licenses of intellectual property to RRI if any third party provided services to

develop the applications (id. ¶ 12(d)(iii)); and (4) that the parties would eventually

"negotiate and draft a long-form contract" (id. ¶ 12).  However, the parties do not

dispute that the SOT was never executed and that no long-form contract was ever

signed.  (Id. ¶ 13; doc. # 1 Ex. A ¶¶ 14–15; doc. # 20 at 2.)

      Despite the parties' failure to execute the SOT or a long-form

contract, NBA began developing the applications and hired Steven Doyle

("Doyle") as a programmer.  (Doc. # 1 Ex. A ¶¶ 11–12; doc. #10 App. A ¶ 12.)

Both parties acknowledge that RRI advertised to customers that certain of the

applications would be available for sale at a "Date with Destiny" event on

December 17, 2011, and subsequently at a "Business Mastery Seminar" on January

20, 2012.  (Doc. # 10 App. C ¶¶ 16–18; doc. #1 Ex. A ¶¶ 14–15.)  However, NBA

did not deliver the applications by those dates.  (Doc. # 10 App. C ¶¶ 17–19;

doc. # 1 Ex. A ¶¶ 14–15.)  RRI claims that NBA represented that the applications

would be completed in time for the events (doc. # 10 App. C ¶¶ 16–17) and that

NBA's failure to deliver the applications forced RRI to offer attendees at the

Business Mastery Seminar alternative compensation amounting to $192,000

(id. ¶ 19).

      On January 3, 2012, apparently over a year after he began working on

the applications, Doyle signed a letter agreement with NBA.  (Doc. # 1

Ex. A ¶ 16.)  The agreement purported to define all software and other materials developed by Doyle as "works for hire" that belonged to NBA under copyright law.  (Doc. # 10 App. C ¶ 21; Doc. # 1 Ex. A ¶ 16.)  The agreement also prohibited Doyle from performing any services for RRI for a period of one year after the termination of his contract with NBA.  (Doc. # 10 App. C ¶ 26; doc. # 1 Ex. A ¶ 16.)  RRI alleges that NBA "induced Doyle to enter into the letter agreement based on the false representation that [it] was required by [NBA's] agreement with RRI."  (Doc. # 10 App. C ¶ 25.)

According to RRI, on January 22, 2012, NBA's counsel, Michael Paradise ("Paradise"), informed RRI's counsel, Frederick Gartside ("Gartside"), that NBA would not deliver the applications to RRI.  (Doc. # 10 App. C ¶ 29.) Paradise allegedly told Gartside that "RRI would have no choice but to buy-out [NBA]."  (Id.)  RRI further alleges that on January 24, 2012, Paradise demanded that RRI pay $900,000 to buy NBA's rights to the applications.  (Id.)  On January 25, 2012, Doyle and RRI entered into a written contract whereby Doyle assigned his rights and interest in the applications to RRI.  (Doc. # 10 App. C ¶ 31; doc. # 1 Ex. A ¶ 18.)

II.    Initiation of the California and Texas Actions

On January 30, 2012, RRI filed a complaint against NBA in the United States District Court for the Central District of California.  See Robbins

5

Research Int'l, Inc. v. NeedBasedApps, LLC, et al, No. 2:12-cv-00797-GW-JEM
(C.D. Cal. Jan. 30, 2012) [hereinafter "California action"]; see also doc. # 10
App. A.  The complaint included claims for breach of contract, intentional and
negligent misrepresentation, and declaratory relief.  (Id.)

On February 20, 2012, NBA filed a lawsuit against RRI and Robbins
in Texas state court ("the Texas action").  (Doc. # 1 Ex. A.)  The state court
petition included claims for breach of contract, tortious interference with a
contract, conspiracy, misappropriation of trade secrets, and declaratory relief.  (Id.)
Then, on March 23, 2012, NBA filed in the California action a Motion to Dismiss
for Lack of Personal Jurisdiction.  (California action, doc. # 10.)  On the same day,
NBA filed a Motion to Dismiss Case or Transfer, arguing that RRI's complaint
should be dismissed with prejudice on various grounds, including that it "fail[ed]
to join indispensable party Steven Doyle"; or, alternatively, that the case should be
transferred, pursuant to 28 U.S.C. § 1404(a), to the Western District of Texas,
where Doyle could be joined.  (California action, doc. # 9 at 3.)

RRI removed the Texas action to this Court on March 30, 2012,
asserting that federal jurisdiction is appropriate because NBA's claims require
application of federal copyright law.  (Doc. # 1 at 4–8.)  Then, on April 5, 2012,
RRI filed its First Amended Complaint in the California action, joining Doyle as a
party plaintiff.  (California action, doc. # 17.)  In light of the First Amended

Complaint, the Honorable George H. Wu, United States District Judge for the

Central District of California, vacated NBA's motions to dismiss or transfer.

(California action, doc. # 19.)

On April 12, 2012, NBA filed in the Western District of Texas the

Motion for Preliminary Injunction that is now before the Court, urging the Court

"to enjoin RRI and Doyle, parties over whom it has jurisdiction, from prosecuting

in the California case duplicative claims (especially declaratory judgment claims)

that already are pending within its existing subject matter jurisdiction, in [the

Texas] case."  (Doc. # 8 at 6 (emphasis added).)  Shortly thereafter, on April 16,

2012, Defendants filed a number of alternative motions that are also before the

Court: (1) a Motion to Dismiss or Transfer Action Pursuant to "First Filed" Rule;

(2) an Alternative Motion to Dismiss or Transfer Based on Improper Venue; (3) an

Alternative Motion to Transfer Pursuant to 28 U.S.C. § 1404(a); and (4) an

Alternative Motion to Stay Proceedings Pending Rulings in First-Filed Case.

(Doc. # 10.)  Each of Defendants' motions urges the Court to find, on various

grounds, that the United States District Court for the Central District of California

is the proper venue for resolution of the dispute between these parties.

On April 25, 2012, NBA filed the Opposed Motion for Referral to

Mediation that is also before the Court.  (Doc. # 15.)  Defendants filed their

Response in Opposition to Motion on April 30, 2012, calling NBA's motion "a

waste of judicial resources and an effort to circumvent the jurisdiction of the United States District Court for the Central District of California, in which the first-filed case between the parties is pending." (Id. at 1.)

On April 30, 2012, NBA again filed in the California action (1) a Motion to Dismiss for Lack of Jurisdiction (California action, doc. # 23) and (2) a Motion to Dismiss Case or Transfer (California action, doc. # 24). On June 5, 2012, Judge Wu denied NBA's motion to dismiss for lack of jurisdiction and granted NBA's motion to dismiss as to RRI's claim for breach of a written contract, granting RRI leave to amend. (California action, doc. # 31.) Finally, Judge Wu denied NBA's motion to transfer, adding that "[t]he Court perceive[d] zero indications that the choice of forum in this case was as the result of forum shopping." (California action, doc. # 30 at 4; 12-cv-00291-DAE, doc. # 24 at 5.)

On July 17, 2012, NBA filed in the California action a Motion to Dismiss First, Second, Third, Sixth, and Seventh Causes of Action for Failure to State Any Claim (Rule 12(b)(6)); Fourth and Fifth Actions for Lack of Subject Matter Jurisdiction (Rule 12(b)(1)). (California action, doc. # 42.) Three days later, RRI moved for leave to file its Third Amended Complaint and to add Mark Geller (a principal of NBA) as a defendant. (California action, doc. # 44.) On August 31, 2012, Judge Wu dismissed RRI's first and second causes of action (breach of express contract and breach of implied-in-fact contract), granting leave

8

to amend; denied all of NBA's other motions, including its motion to transfer the action to the Western District of Texas; and denied RRI's motion for leave to add Mark Geller as a defendant.  (California action, doc. # 65.)

On September 10, 2012, RRI filed its Third Amended Complaint against NBA and Does 1 through 10, bringing claims for (1) breach of express contract; (2) breach of implied-in-fact contract; (3) quasi-contract; (4) breach of express contract (for the $20,000 loan); (5) intentional misrepresentation; and (6) declaratory relief.  (Doc. # 32 Ex. B.)  On November 5, 2012, Judge Wu denied NBA's motion to dismiss the Third Amended Complaint.  (Id. Ex. C.)  On November 19, 2012, NBA filed its Amended Answer to Plaintiffs' Third Amended Complaint (id. Ex. D), alleging as affirmative defenses some of the claims it asserted in the Texas litigation.

On January 22, 2013, Judge Wu entered a New Scheduling Order in the California action.  (Doc. # 32 Ex. A.)  Pursuant to that ruling, mediation between all parties is scheduled to occur on February 26 or 27, 2013, in Las Vegas, Nevada, with Hon. David Hagan.  (Id.)  The Order further provided that mediation must be complete by March 27, 2013; that the discovery cut-off is July 1, 2013; and that the trial is currently set for September 10, 2013.  (Id.)

Currently before this Court are NBA's Motion for Preliminary Injunction (doc. # 8); NBA's Motion for Referral to Mediation (doc. #15); and

various alternative motions—a Motion to Dismiss or Transfer Action Pursuant to
"First Filed" Rule, an Alternative Motion to Dismiss or Transfer Based on
Improper Venue, an Alternative Motion to Transfer Pursuant to 28 U.S.C. §
1404(a), and an Alternative Motion to Stay Proceedings Pending Rulings in First-
Filed Case—filed by Defendants (doc. # 10).

## LEGAL STANDARD

"The federal courts long have recognized that the principle of comity
requires federal district courts—courts of coordinate jurisdiction and equal rank—
to exercise care to avoid interference with each other's affairs." W. Gulf Mar.
Ass'n v. ILA Deep Sea Local 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO, 751
F.2d 721, 728 (5th Cir. 1985) (citing Kerotest Mfg. Co. v. C-O-Two Fire Equip.
Co., 342 U.S. 180 (1952)). "As between federal district courts, . . . the general
principle is to avoid duplicative litigation." Colo. River Water Conservation Dist.
v. United States, 424 U.S. 800, 817 (1976). "The concern manifestly is to avoid
the waste of duplication, to avoid rulings which may trench upon the authority of
sister courts, and to avoid piecemeal resolution of issues that call for a uniform
result." W. Gulf Mar. Ass'n, 751 F.2d at 729.

Toward this end, the Fifth Circuit adheres to the "first-to-file rule,"
which states that "when related cases are pending before two federal courts, the
court in which the case was last filed may refuse to hear it if the issues raised by

the cases substantially overlap."  Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d

599, 603 (5th Cir. 1999).  This rule "maximize[s] judicial economy and

minimize[s] embarrassing inconsistencies" by permitting a district court to

"prophylactically refus[e] to hear a case raising issues that might substantially

duplicate those raised by a case pending in another court."  Id. at 604.

      The first-to-file rule not only determines which court may decide the

merits of substantially similar issues but also establishes which court may decide

whether the second suit filed must be dismissed, stayed, or transferred and

consolidated.  Under Fifth Circuit precedent, "the court in which an action is first

filed is the appropriate court to determine whether subsequently filed cases

involving substantially similar issues should proceed."  Save Power Ltd. v. Syntek

Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997).  In other words, "[i]n the absence of

compelling circumstances the court initially seized of a controversy should be the

one to decide whether it will try the case."  Mann Mfg., Inc. v. Hortex, Inc., 439

F.2d 403, 407 (5th Cir. 1971).

      Thus, the "crucial inquiry" for the court in which the subsequent case

is filed is whether there is "substantial overlap" between the two actions.  Save

Power, 121 F.3d at 950.  The rule does not require that the claims or even the

parties be identical.  See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp., 665 F.3d

671, 678 (5th Cir. 2011) ("The rule does not require the cases to be identical."); W.

11

Gulf. Mar. Ass'n, 751 F.2d at 731 n.5 (noting that incomplete identity of the parties does not require the simultaneous litigation of two essentially identical actions where the parties could obtain complete relief in one forum and any missing parties could probably be joined in that action).  Instead, if the two actions are likely to "overlap on the substantive issues," they should be consolidated in "the jurisdiction first seized of the issues."  Mann Mfg., 439 F.2d at 408 n.6; see also id. ("Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [court in the second-filed case] to resolve the question of whether both should be allowed to proceed"; that authority belonged to the court in the first-filed case) (emphasis added); Cadle, 174 F.3d at 606 ("[O]nce the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed.") (emphasis added).

DISCUSSION

I.    Defendants' Motion to Dismiss or Transfer Action Pursuant to "First Filed" Rule

Defendants argue that this case should be dismissed or transferred to the Central District of California pursuant to the first-to-file rule.  For the reasons that follow, the Court concludes that, pursuant to the first-to-file rule, this action

should be transferred to the Central District of California for a determination of whether the Texas action should be allowed to proceed independently or consolidated with the California action.  Accordingly, the Court declines to address Defendants' other asserted grounds for dismissal, transfer, or stay.

A.   The Two Actions "Substantially Overlap"

There is no dispute that the case before this Court, filed on February 20, 2012, was filed subsequently to the California action, which was filed on January 30, 2012.  (See doc. # 10 at 2; doc. # 20 at 8.)  Thus, the "crucial inquiry" for this Court, as the court of second filing, is whether there is a "likelihood of substantial overlap" between the two actions.  Save Power, 121 F.3d at 950. Again, the rule does not require that the claims or even the parties be identical. See Int'l Fidelity Ins. Co., 665 F.3d at 678; W. Gulf. Mar. Ass'n, 751 F.2d at 731 n.5.  Instead, "all that need be present is that the two actions involve closely related questions or common subject matter . . . ." Tex. Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 997 (E.D. Tex. 1993).

That these two actions substantially overlap can hardly be denied; both arise from the very same transactions and occurrences, the same fight over who owns the applications and related intellectual property.  In the Texas action, NBA asserts that RRI induced Doyle to breach his agreement with NBA as part of a "scheme to misappropriate and/or steal the NBA technology and the NBA

products." (Doc. # 1 Ex. A ¶ 13; id. ¶¶ 46–48.)  NBA's second claim is against

Doyle for breach of contract, alleging that he "breached the contract by disclosing,

purportedly selling, and delivering to RRI and Robbins, the NBA Technology, and

the NBA Products . . . ."  (Id. ¶ 24.)  NBA also brings claims for misappropriation

of trade secrets, arising from the same transaction, against Doyle, Robbins, and

RRI.  (Id. ¶¶ 32–39; id. ¶¶ 40–45.)  Finally, NBA requests a declaration that it

owns the intellectual property that Doyle purportedly assigned to RRI.

(Id. ¶¶ 27–29.)

        Each of these claims is essentially a mirror image of one or more

claims that RRI brought against NBA in the California action.  While NBA alleges

in the Texas action that RRI induced Doyle to breach his agreement with NBA as

part of a scheme to misappropriate NBA technology (doc. # 1 Ex. A ¶ 13;

id. ¶¶ 46–48), RRI, in the California action, brings claims for breach of contract

against NBA for its "fail[ure] to cause Doyle to enter into an agreement providing

for the transfer and license of intellectual property to RRI" and its alleged

inducement of Doyle to sign an agreement vesting ownership of the intellectual

property in NBA (doc. # 67 ¶ 40).  These causes of action arise from the same

transactions—the agreements that Doyle signed with NBA and RRI.

        Similarly, the parties' requests for declaratory relief are mirror images

of each other.  In the Texas action, NBA seeks a declaration that it owns, pursuant

to the "work for hire" letter executed on January 3, 2012, the intellectual property that Doyle purportedly assigned to RRI on January 25, 2012.  (Doc. # 1 Ex. A ¶¶ 21, 29(a), 29(b).)  Conversely, RRI, in the California action, seeks a declaration that (1) it owns the intellectual property through its own contribution and through the January 25 assignment from Doyle and that (2) NBA's claims to that property pursuant to the "work for hire" letter Doyle executed are invalid.  (Doc. # 67 ¶¶ 84–88.)  Both actions raise the same question: Who owns the intellectual property that Doyle produced during the relevant time that he was working for NBA?

NBA also requests a declaration that "[a]t no time has RRI or Robbins entered into a contract with NBA by which RRI or Robbins acquired any rights, title, or interests in the NBA Technology, the NBA Products or in any intellectual property" (doc. # 1 Ex. A ¶ 29(c)).  Because RRI alleges that the SOT vested ownership of all relevant intellectual property in RRI, such a declaration would also require this Court to find that the SOT was not binding on the parties.  (See doc. # 20 at 2 (wherein NBA acknowledges that "RRI alleges ownership of the software based upon an unsigned 'summary of terms'").)  Conversely, RRI, in the California action, requests a declaration of "the respective rights and obligations of RRI and NBA under [the SOT]," specifically NBA's obligation "to deliver the software and other work product for the Applications." (Doc. # 67 ¶¶ 87, 85.)

Again, both requests for declaratory relief hinge on the same question: Was the

SOT, while never executed, nevertheless binding on the parties?

As NBA itself admits, "[a]t its core, this case, like the parallel case in

California, involves the question of who owns [the] software" at issue

(doc. # 20 at 1 (emphasis added).).  Indeed, NBA repeatedly makes strong

arguments in favor of transfer when it admits that "at the heart of the parties'

disputes lies the NBA-Doyle relationship and their January 3 Contract"

(doc. # 20 at 9); that many of RRI's claims in the California action "indisputably

would be compulsory counterclaims" in the Texas action (doc. # 8 at 2); and that

RRI and Doyle are "prosecuting in the California case" claims that are

"duplicative" of those in the Texas action (id. at 6).

Moreover, with the exception of Tony Robbins, who is a California

resident and may be joined if NBA desires, all of the defendants in this action are

parties to the California action.  While the parties need not be identical to find

"substantial overlap," Save Power, 121 F.3d at 951, the near identity of these

parties certainly weighs in favor of such a finding.  Because all of the defendants in

the Texas action are subject to the personal jurisdiction of the United States

District Court for the Central District of California, NBA can obtain the same relief

it seeks in Texas by filing counterclaims in the California action.  See W. Gulf.

Mar. Ass'n, 751 F.2d at 731 n.5 (noting that incomplete identity of the parties does

not require the simultaneous litigation of two essentially identical actions where

the parties could obtain complete relief in one forum and any missing parties could

probably be joined in that action).

        In sum, while the claims in this case and the California action are not

identical, "the record shows that the overall content of each suit . . . would likely

overlap to a substantial degree."  <u>Mann Mfg.</u>, 439 F.2d at 407.  Had these actions

both been filed in the same district, the Court has little doubt that they would have

been consolidated pursuant to Federal Rule of Civil Procedure 42(a).  <u>See</u> Fed. R.

Civ. P. 42(a) (permitting a court, in its discretion, to consolidate cases before it that

"involve a common question of law or fact"); <u>Bristol-Myers Squibb Co. v. Safety</u>

<u>Nat'l Cas. Corp.</u>, 43 F. Supp. 2d 734 (E.D. Tex. 1999) (court's discretion to

consolidate premised on balancing test that weighs savings of time and effort

against inconvenience, delay, or expense); <u>Morrison v. Amway Corp.</u>, 186 F.R.D.

401, 403 (S.D. Tex. 1998) ("Actions involving the same parties are likely

candidates for consolidation, but a common question of law or fact is sufficient.").

It is clear, therefore, that these two actions "substantially overlap."

    B.  <u>NBA's Arguments Against Transfer Are Meritless</u>

        The first-to-file rule is not an inflexible rule to be mechanically

applied.  Nevertheless, the Fifth Circuit has stated that only "compelling

circumstances" can justify departure from it.  Mann Mfg., Inc., 439 at 407.  As

detailed below, the Court does not find such compelling circumstances in this case.

      1.  RRI Has Not Engaged in Forum Shopping

As a preliminary matter, while NBA claims that "[RRI's] initial

complaint in the California case was merely a sham filing to avoid anticipated

litigation in Texas" (doc. # 20 at 3), the Court finds no evidence of impropriety on

RRI's part.  Instead, the choice of forum in the Central District of California was

reasonable on a number of grounds.  First, the California court had subject matter

jurisdiction pursuant to 28 U.S.C. § 1331 since, among other things, the

determination of whether Doyle created the software as a "work for hire" for NBA,

and the respective rights of the parties to the intellectual property, require

application of federal copyright law.  See 17 U.S.C. § 101.

Second, the California court had personal jurisdiction over NBA and

Doyle, since each of them had minimum contacts with California sufficient to

support specific jurisdiction over them.  In NBA's case, of course, those minimum

contacts arose from its negotiations with RRI, a California corporation, relating to

a product to be delivered and used in California.  In Doyle's case, those minimum

contacts arose from his entrance into an assignment agreement with RRI, a

California company, and his alleged transfer to RRI of the intellectual property at

issue.  See, e.g., Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985)

(where defendant deliberately created "continuing obligations" between himself and residents of the forum, he availed himself of the privilege of conducting business there, requiring him to submit to the burdens of litigation there as well).

Third, many of the "convenience factors" that courts weigh when considering whether to transfer an action under 28 U.S.C. § 1404(a) favored litigation in the Central District of California.  See In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) (considering (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive).  For example, the agreement between RRI and NBA was negotiated by Robbins and RRI's employees and attorneys, all of whom reside in California. (Doc. # 10 ¶ 32.)   As NBA's counsel admitted at the hearing on February 15, 2013, only one of NBA's three principals lives in Texas; the other two live in New York and Puerto Rico.  The applications at issue were intended for RRI's use in its California-based business.  (Doc. # 10 ¶ 32.)  Additionally, whether or not the SOT's forum-selection clause was binding on the parties (an issue this Court need not address today), it was not unreasonable for RRI to believe that it was and to act accordingly when initiating the California action.  (See doc. # 10 ¶¶ 16–17

(indicating that RRI believed NBA had accepted the terms of the SOT by email and that the parties had acted in reliance on it).)

Finally, the Court finds NBA's allegations that RRI somehow "recruited Doyle to move to California" (doc. # 8 at 8) so that it could join him as a party in the California action to be both unsupported by the record and irrelevant. NBA has given this Court no reason to believe that Doyle, who once declared that he had no interest in the litigation (see id.; doc. # 10 at 12), would move across the country at RRI's behest for the purpose of litigating these claims there.  Nor is there any reason to believe that RRI's decision to join Doyle as a party—which it did in response to NBA's motion arguing that Doyle was an indispensable party (doc. # 24)—was improper.

As Judge Wu stated in his order denying NBA's motion to transfer the California action to this Court, "[t]he Court perceives zero indications that the choice of forum in this case was as the result of forum shopping."  (California action, doc. # 30 at 4; 12-cv-00291-DAE, doc. # 24 at 5.)  Considering the parties and the subject matter, the United States District Court for the Central District of California was a logical and proper place for RRI to file suit.  Accordingly, the Court rejects NBA's contentions that the first-to-file rule should be disregarded based on RRI's alleged forum shopping.

2.   This Court May Not Decide the Propriety of the California Action

More fundamentally, NBA's argument that the first-filed case is a "sham" misses the mark: The propriety of the California action is not for this Court to decide.  Although the Fifth Circuit generally disallows the use of an anticipatory declaratory judgment action to establish venue, see Granite State Ins. Co. v. Tandy Corp., 986 F.2d 94, 96 (5th Cir. 1992), it is the court of first filing that determines whether the first-filed case should proceed.  See Cadle, 174 F.3d at 606 ("[O]nce the district court found that the issues might substantially overlap, the proper course of action was for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed."); Tex. Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 999 (E.D. Tex. 1993) ("Apprehension that the first-filed court will fail to appropriately consider the convenience of the parties and the witnesses is not a proper matter for the Court's consideration."); Lear Siegler Servs. v. Ensil Int'l Corp., SA-05-CA-0679-XR, 2005 WL 2645008, at *2 (W.D. Tex. Sept. 20, 2005) ("The validity of the [first-filed] Action is not before this Court.  The issue before this Court is whether the cases are so duplicative or involve substantially similar issues that one court should decide the subject matter of both actions.").

NBA itself acknowledges that "[i]n the absence of compelling circumstances, the court initially seized of a controversy should be the one to decide whether it should try the case" (doc. # 19 at 3–4), but it claims this Court, not the California court, is the court of first filing.  "[T]his Court," says NBA, "is the first court, from an actual and practical perspective, to be in a position to do what the California court could not do when RRI filed suit there; that is, adjudicate the entire controversy between all necessary and indispensable parties . . . ." (Doc. # 20 at 12.)  However, this premise is mistaken: the first-to-file rule favors the court "initially seized" of the <u>subject matter</u> of a controversy, not the court in which all current parties were first joined.  <u>See</u> <u>Mann Mfg. Inc.</u>, 439 F.2d at 408 (holding that the court with "prior jurisdiction over the common <u>subject matter</u>" should resolve all issues in related actions) (emphasis added).  It does not matter when an additional party (here, Doyle) was joined in the first-filed suit, because "regardless of whether or not the suits . . . are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of <u>the issues</u>." <u>Id.</u> (emphasis added).  Accordingly, the California court, as the court initially seized of the controversy surrounding the intellectual property at issue in this case, is undoubtedly the court of first filing.

### C.   The California Court Must Decide Which Case Should Proceed

Because it is clear that (1) there is a "likelihood of a substantial overlap" between these two actions and that (2) the California court is the court of first filing, this Court must permit the California court to determine which action should proceed.  Sutter Corp. v. P&P Indus., Inc., 125 F.3d 914, 920 (5th Cir. 1997) (holding that the district court in the second-filed action abused its discretion in denying a motion to dismiss, transfer, or stay proceedings to allow the first-filed court to rule).  If the United States District Court for the Central District of California determines that the interests of justice and judicial economy require that the action be adjudicated in this district, it may transfer the action back to this Court; but this Court, as the court of second filing, may not make such a determination itself.  See Mann Mfg., 439 F.2d at 408 n.6 ("Once the likelihood of substantial overlap between the two suits had been demonstrated, it was no longer up to the [court in the second-filed case] to resolve the question of whether both should be allowed to proceed"; that authority belonged to the court in the first-filed case.).  "This Court simply may not, consistent with the principles of comity and conservation of judicial resources, usurp the first-filed court's role."  Tex. Instruments Inc., 815 F. Supp. at 999.

Accordingly, the Court grants Defendants' Motion insofar as it holds that the first-to-file rule warrants the transfer of this case to the United States

District Court for the Central District of California.  The Court denies as moot

Defendants' remaining alternative motions to the extent they argue alternative

bases for dismissal, transfer, or stay of this action.

II.     NBA's Motion for Preliminary Injunction

On April 9, 2012, NBA filed a Motion for Preliminary Injunction in

this action (doc. # 8), requesting that this Court "enjoin[] RRI and Doyle from

prosecuting the subject matter of Doyle's claims in the California case."  (Id. at 2.)

NBA argues that RRI and Doyle are attempting to prosecute in California claims

that are "duplicative" (id. at 6) of those before this Court.  For the reasons already

given, this Court agrees that the two actions are "duplicative"; however, the Court

has determined that the proper course of action is to transfer this action to the

United States District Court for the Central District of California.

In light of the transfer of this case to California, there is no longer a

"Texas action" for this Court to prioritize over the California action.  Accordingly,

NBA's request that this Court enjoin RRI and Doyle from prosecuting their claims

in California (and, accordingly, that this Court require them to prosecute those

claims in the Texas action) is denied as moot.

III.    NBA's Motion for Referral to Mediation

On April 25, 2012, NBA filed a Motion for Order Referring Case to

Mediation (doc. # 15).  NBA requested that this court "appoint a mediator and

enter an order referring the parties to mediation . . . ." (Id. at 6.)  In light of this Court's decision to transfer this case to the United States District Court for the Central District of California, where the parties are scheduled to mediate this dispute later this month, NBA's Motion is denied as moot.

CONCLUSION

For the reasons given, the Court hereby **GRANTS** Defendants' Motion to Dismiss or Transfer Action Pursuant to "First Filed Rule" (doc. # 10 at 3–5) and **TRANSFERS** this case to the United States District Court for the Central District of California.  The Court hereby **DENIES AS MOOT** Defendants' remaining alternative motions for dismissal, transfer, or stay (doc. # 10 at 5–13).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (doc. # 8) is **DENIED AS MOOT**; and that Plaintiff's Motion for Order Referring Case to Mediation (doc. # 15) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

**DATED**:  San Antonio, Texas, February 20, 2013.

_____
David Alan Ezra
Senior United States District Judge